**RCO Legal, P.S.**
13555 SE 36th St., Ste. 300
Bellevue, WA 98006
Phone: 425.458.2121
Fax: 425.458.2131
www.rcolegal.com

Honorable Judge Marc L. Barreca
Chapter 11
Hearing Location: Seattle, WA
Hearing Date: September 5, 2014
Hearing Time: 9:30 am

UNITED STATES BANKRUPTCY COURT
WESTERN DISTRICT OF WASHINGTON

| IN RE:<br><br>BONNIE E SLIGER AND<br>KENNETH D SLIGER,<br><br>Debtors. | **CHAPTER 11 BANKRUPTCY**<br><br>**CASE NO.: 13-19444-MLB**<br><br>**THE BANK OF NEW YORK MELLON F/K/A THE BANK OF NEW YORK, AS TRUSTEE FOR THE HOLDERS OF THE CERTIFICATES, FIRST HORIZON MORTGAGE PASS-THROUGH CERTIFICATES SERIES FHAMS 2005-FA5, BY FIRST HORIZON HOME LOANS, A DIVISION OF FIRST TENNESSEE BANK NATIONAL ASSOCIATION, MASTER SERVICER, IN ITS CAPACITY AS AGENT FOR THE TRUSTEE UNDER THE POOLING AND SERVICING AGREEMENT AND ITS SERVICING AGENT NATIONSTAR MORTGAGE, LLC'S OBJECTION TO CONFIRMATION OF DEBTORS' FIRST AMENDED CHAPTER 11 PLAN OF REORGANIZATION** |
|---|---|

COMES NOW The Bank of New York Mellon f/k/a The Bank of New York, as Trustee for the holders of the Certificates, First Horizon Mortgage Pass-Through Certificates Series FHAMS 2005-FA5, by First Horizon Home Loans, a division of First Tennessee Bank National Association, Master Servicer, in its capacity as agent for the Trustee under the Pooling and Servicing Agreement and its servicing agent Nationstar Mortgage, LLC ("Creditor"), and objects to confirmation of Bonnie E. Sliger and Kenneth D. Sliger's ("Debtor" collectively hereafter) proposed First Amended Plan of Reorganization (hereinafter "Plan"). The basis for this objection is that the Plan does not

THE BANK OF NEW YORK MELLON'S
OBJECTION TO CONFIRMATION . . . Page - 1
87150

RCO
LEGAL, P.S.

13555 SE 36th St., Ste. 300
Bellevue, WA 98006
Phone: 425.458.2121
Fax:    425.458.2131

Case 13-19444-MLB    Doc 97    Filed 08/29/14    Ent. 08/29/14 13:01:10    Pg. 1 of 10

comply with the provisions of Title 11, chapter 13 of the United States Bankruptcy Code and thus should not be confirmed by the Court.

## I. BACKGROUND

On or about May 10, 2005, Bonnie E. Sliger and Kenneth D. Sliger executed and delivered a note in favor of First Horizon Corporation d/b/a First Horizon Home Loans in the original principal amount of $322,000.00. This Note was secured by a Deed of Trust ("Deed") encumbering real property commonly described as 1088 Golf Course Road, Friday Harbor, WA 98250 ("Property"). Creditor is the holder of the note or services the note for the holder.

On October 25, 2013, Debtor filed for protection under Title 11, chapter 11 of the United States Code under cause number 13-19444-MLB in the above listed court.

The outstanding balance due on the Note as of filing is approximately $336,426.87. As of the same date the loan is contractually due for the October 2011 payment. The pre-petition arrears, including payments, late charges, escrow advances and accrued fees and costs are $69,967.66 per Creditor's filed proof of claim. The interest rate on the loan is fixed at 6.250 percent. The current ongoing monthly payment is $1,982.61.

The Debtor provides for Creditor's claim as Class E. The Debtor provides that the claim shall be treated as secured in the amount of $255,000.00. The Debtor proposes to amortize the debt over 30 years with interest at 3.875% with monthly payments in the amount of $1,199.10. The Debtor does not propose to cure the loan arrearage.

## II. ARGUMENT AND AUTHORITY

Creditor objects to confirmation of the Plan on the following grounds: (1) The Plan violated the anti-modification provision of 11 U.S.C. §1123(b)(5); (2) the proposed Plan does not meet the "fair and equitable" test of 1129(b)(2) because the proposed Plan does not satisfy the requirements of 11 U.S.C. § 1129(b)(2)(A); (3) the proposed interest rate does not meet the "prime-plus" test enunciated by the Supreme Court in *Till*;, (4) the Debtor does not provide for cure of the loan arrearage owing to

THE BANK OF NEW YORK MELLON'S
OBJECTION TO CONFIRMATION . . . Page - 2
87150

RCO LEGAL, P.S.

13555 SE 36th St., Ste. 300
Bellevue, WA 98006
Phone: 425.458.2121
Fax: 425.458.2131

Case 13-19444-MLB    Doc 97    Filed 08/29/14    Ent. 08/29/14 13:01:10    Pg. 2 of 10

Creditor; (5) the plan effectively strips Creditor's lien upon confirmation; and (6) the Plan does not contain default provisions.

**A. The Plan Violates the Anti-modification Provision of 11 U.S.C. § 1123(b)(5):**

The Debtor, in his treatment of Class E, proposes to modify the terms of the loan to cramdown the interest rate to 3.875 percent, to amortize the loan over 30 years with a monthly payment in the amount of $1,199.10. The loan is a fixed rate loan with interest at 6.25 percent. The maturity date on the loan is June 1, 2035 and the current monthly loan payment is $1,982.61. The Property is the Debtor's principal residence.

Section 1123(b)(5) provides that "Subject to subsection (a) of this section, a plan may –

[m]odify the rights of holders of secured claims, *other than a claim secured only by a security interest in real property that is the debtor's principal residence*" (emphasis added). This language is identical to the language in the anti-modification provision in Chapter 13, 11 U.S.C. § 1322(b)(2), and it is appropriate to review case law applying that provision. *See Lomas Morg., Inc. v. Louis*, 82 F.3rd 1, at 6-7 ("The anti-modification language of § 1123(b)(5) is identical to that of § 1322(b)(2). The legislative history of §1123(b)(5) reveals that Congress deliberately tracked the anti-modification language of § 1322(b)(2) and intended conformity of treatment between Chapter 13 and Chapter 11"). The anti-modification provision has been interpreted to mean that the loan balance cannot be reduced or "stripped down," nor can the claim of a creditor secured by real property that is the debtor's principal residence be bifurcated into secured and unsecured portions under 11 U.S.C. § 506(a)(1). The anti-modification provision also applies to amendment of the loan terms including adjustment of the interest rate, payment amount, loan balance and loan terms. With regard to Class E and Creditor's claim, this is exactly what the Debtor's plan proposes to do. The Plan provides for

THE BANK OF NEW YORK MELLON'S
OBJECTION TO CONFIRMATION . . . Page - 3
87150

RCO
LEGAL, P.S.

13555 SE 36th St., Ste. 300
Bellevue, WA 98006
Phone: 425.458.2121
Fax:    425.458.2131

Case 13-19444-MLB    Doc 97    Filed 08/29/14    Ent. 08/29/14 13:01:10    Pg. 3 of 10

modification of the interest from a fixed rate of 6.25% to 3.875%. The Debtor also proposes to modify the loan term and payment amount to a payment amortized over 30 years from the effective date of the plan and to reduce the total debt from $336,426.87 to $255,000.00 and reduce payments from $1,982.61 to $1,199.10. Creditor objects to the Debtor's proposal. It is undisputed that the Property is the Debtor's principal residence thus modification of the loan terms and cramdown of the debt is forbidden by the Code.

**B. The Proposed Plan does not meet the "Fair and Equitable" test:**

Pursuant to 11 U.S.C. § 1129(b), in order to confirm a plan over the objection of creditors, the court must find that the plan is "fair and equitable." In the context of plan confirmation, courts have construed the term "fair and equitable" as used in 11 U.S.C. § 1129(b) in both a technical and non-technical sense. In the technical sense, the term means that the plan complies with the provisions of 11 U.S.C. § 1129(b)(2)(A),(B), and (C). However, mere compliance with the provisions of §1129(b)(2)(A),(B), and (C) does not, *ipso facto*, mean that a plan is "fair and equitable." Section 1129 does not state that a plan that satisfies the standards contained in that paragraph *is* fair and equitable. Rather, Section 1129 states that "fair and equitable" applied to dissenting classes of secured and unsecured creditors, or equity interests, "includes" the treatment contained in § 1129(b)(2). To satisfy the "fair and equitable" standard, the plan proponent must satisfy both the elements enumerated by the statute and the ordinary meaning of the phrase.

> To be "fair and equitable" under § 1129(b)(1) a plan must literally be fair and equitable. . . . Section 1129(b)(2) sets minimal standards that the plan must meet. . . . Technical compliance with all the requirements in § 1129(b) does not assure that the plan is "fair and equitable." A court must consider the entire plan in the context of the rights of the creditors under state law and the particular facts and circumstances when determining whether a plan is "fair and equitable."

*In re Manion*, 127 B.R. 887, 890 (Bankr. N.D. Fla. 1991)

THE BANK OF NEW YORK MELLON'S
OBJECTION TO CONFIRMATION . . . Page - 4
87150

RCO
LEGAL, P.S.

13555 SE 36th St., Ste. 300
Bellevue, WA 98006
Phone: 425.458.2121
Fax:    425.458.2131

Case 13-19444-MLB    Doc 97    Filed 08/29/14    Ent. 08/29/14 13:01:10    Pg. 4 of 10

The court in *Manion* explored the non-technical meaning of "fair and equitable" in the context of a plan that called for a long-term payout, and noted the following concerns raised by plans proposing long-term payouts:

1. Does the record support a finding that the debtor will have the capacity to perform over the long term?

2. Does the long-term plan impermissibly allow the debtor to speculate with the creditor's collateral?

3. Is there a sufficient equity cushion?

*Manion*, at 891. In that case, the Court found that a plan that converted a claim based on a mortgage that called for principal and interest payments with a 20-year amortization and a balloon payment after 5 years to a forced loan that eliminated the balloon payment was not fair and equitable because the debtor's continued ability to perform was dependent on the renewal of a year-to-year lease of the premises by the state, the debtor's principal shareholder was 69 years old, the plan impermissibly required the creditor to bear the risk of loss or further declines in value, and the equity cushion was less than $2,500, real estate markets were depressed, no provision was made for any reserves for maintenance or replacement of items like appliances or the roof, and vast appreciation in value was unlikely. Similar objections pertain here. This Plan depends primarily on the ability of the Debtor either to service the loans secured by the other properties. The proposed cramdown of the debt permits the Debtor to speculate on future appreciation in the value of the Property while leaving Creditor to bear the risk of loss in the event the value of the Property declines. There is no equity cushion. There is also no provision for reserves to repair the foreseeable deterioration of the

THE BANK OF NEW YORK MELLON'S
OBJECTION TO CONFIRMATION . . . Page - 5
87150

RCO
LEGAL, P.S.

13555 SE 36th St., Ste. 300
Bellevue, WA 98006
Phone: 425.458.2121
Fax:    425.458.2131

Case 13-19444-MLB    Doc 97    Filed 08/29/14    Ent. 08/29/14 13:01:10    Pg. 5 of 10

collateral securing Creditor's claims. The Plan therefore does not meet the non-technical meaning of "fair and equitable."

**C. The Proposed Interest Rate Is Inadequate and does not comply with *In re Till:***

With respect to a class of secured claim, the "fair and equitable" test includes a requirement that the plan provides "that each holder of a claim of such class receive on account of such claim deferred cash payments totaling at least the allowed amount of such claim, of a value, as of the effective date of the plan, of at least the value of such holder's interest in the estate's interest in such property." The "value, as of the effective date of the plan," is also referred to as the "present value." In order to determine the present value of a stream of future payments, an appropriate discount rate is applied. The discount rate (or interest rate) proposed by the Debtor for Class E is 3.875%. Creditor objects to this proposal on the basis that: 1) the interest rate for Class E cannot be modified, and 2) even if modifiable, the rate is far too low for the risk involved.

**1. The contract interest rate cannot be modified:**

As explained in section A. above the interest rate on the debt owed to Class E cannot be modified pursuant to 11 U.S.C. §1123(b)(5).

**2. The rate is too low for the risk involved:**

The interest rate of 3.875 is too low for the risk involved and do not comply with *In re Till.* No lender would make a loan on real property, with no money down, and little to no interest to a failed real estate speculator in bankruptcy. Such a loan would violate all standards of prudent underwriting. The appropriate discount rate must reflect, *inter alia*, the level of risk of default, the creditworthiness of the borrower, and the quality of collateral.

RCO
LEGAL, P.S.
13555 SE 36th St., Ste. 300
Bellevue, WA 98006
Phone: 425.458.2121
Fax: 425.458.2131

In the context of a Chapter 13 case, the the Supreme Court enunciated the test for the cramdown interest rate in *Till v. SCS Credit Corp.*, 541 U.S. 465, 124 S.Ct. 1951, 158 L.Ed.2d 787 (2004):

> although § 1325(a)(5)(B) entitles the creditor to property whose present value objectively equals or exceeds the value of the collateral, it does not require that the terms of the cramdown loan match the terms to which the debtor and creditor agreed prebankruptcy, nor does it require that the cramdown terms make the creditor subjectively indifferent between present foreclosure and future payment. Indeed, the very idea of a "cramdown" loan precludes the latter result: By definition, a creditor forced to accept such a loan would prefer instead to foreclose. Thus, a court choosing a cramdown interest rate need not consider the creditor's individual circumstances, such as its prebankruptcy dealings with the debtor or the alternative loans it could make if permitted to foreclose. Rather, the court should aim to treat similarly situated creditors similarly, and to ensure that an objective economic analysis would suggest the debtor's interest payments will adequately compensate all such creditors for the time value of their money and the risk of default.
> *Id.*, at 476.

The Court went on to outline its approved approach to determining the appropriate interest rate:

> The formula approach has none of these defects. Taking its cue from ordinary lending practices, the approach begins by looking to the national prime rate, reported daily in the press, which reflects the financial market's estimate of the amount a commercial bank should charge a creditworthy commercial borrower to compensate for the opportunity costs of the loan, the risk of inflation, and the relatively slight risk of default. Because bankrupt debtors typically pose a greater risk of nonpayment than solvent commercial borrowers, the approach then requires a bankruptcy court to adjust the prime rate accordingly. The appropriate size of that risk adjustment depends, of course, on such factors as the circumstances of the estate, the nature of the security, and the duration and feasibility of the reorganization plan. The court must therefore hold a hearing at which the debtor and any creditors may present evidence about the appropriate risk adjustment. Some of this evidence will be included in the debtor's bankruptcy filings, however, so the debtor and creditors may not incur significant additional expense. Moreover, starting from a concededly *low* estimate and adjusting *upward* places the evidentiary burden squarely on the creditors, who are likely to have readier access to any information absent from the debtor's filing (such as evidence about the "liquidity of the collateral market," *post,* at 1973 (SCALIA, J., dissenting)). Finally, many of the factors relevant to the adjustment fall squarely within the bankruptcy court's area of expertise.
> *Id.*, at 478-479.

THE BANK OF NEW YORK MELLON'S
OBJECTION TO CONFIRMATION . . . Page - 7
87150

RCO LEGAL, P.S.

13555 SE 36th St., Ste. 300
Bellevue, WA 98006
Phone: 425.458.2121
Fax:    425.458.2131

Case 13-19444-MLB    Doc 97    Filed 08/29/14    Ent. 08/29/14 13:01:10    Pg. 7 of 10

Here, the Debtor proposes an interest rate far below the rate available for the most creditworthy borrowers seeking loans on owner-occupied real property. The terms as suggested by the Debtor (3.875%) are unavailable in the open market considering all the factors related to the Property, and Creditor should not be forced to make loans on these terms.

Accordingly, Creditor requests that if the Court is inclined to confirm the Plan, the Court set a hearing at which the Debtor and any creditors may present evidence about the appropriate risk adjustment.

### D.  Debtors must turn over rental income to Creditor:

Pursuant to the loan documents, Creditor holds a security interest in the "rents and revenues" of the property. Specifically, paragraph H. of the 1-4 Family Rider:

> "Borrower absolutely and unconditionally assigns and transfers to Lender all the rents and revenues ("Rents") of the Property, regardless of to whom the Rents of the Property are payable. . . . This assignment of Rents constitutes an absolute assignment and not an assignment for additional security only."

A true and correct copy of the Deed of Trust and 1-4 Family Rider is attached to the Proof of Claim filed with the Court and is incorporated herein by reference. Creditor is entitled to all rental income from the Property and said rental income cannot be used to fund the plan. The Debtor claims that the Property is his principal residence. In the future, if the Property no longer is the Debtor's principal residence, he must turn over any rents from the Property.

### E. Debtors must provide proof of Rent Loss Insurance:

Pursuant to the loan documents, Debtor must provide proof of insurance to cover lost rental income and other hazards. Specifically paragraph D. of the 1-4 Family Rider:

> "Borrower shall maintain insurance against rent loss in additional to the other hazards for which insurance is required by Section 5."

THE BANK OF NEW YORK MELLON'S
OBJECTION TO CONFIRMATION . . . Page - 8
87150

RCO
LEGAL, P.S.

13555 SE 36th St., Ste. 300
Bellevue, WA 98006
Phone: 425.458.2121
Fax:    425.458.2131

Case 13-19444-MLB    Doc 97    Filed 08/29/14    Ent. 08/29/14 13:01:10    Pg. 8 of 10

If in the future, the Debtor rents the Property, the Debtor must provide proof of Rent Loss Insurance.

**F. No provision for cure of the loan arrearage.**

The Debtor has not provided for cure of the loan arrearage owing to Creditor. The loan arrearage as of the date of filing of the bankruptcy case is $69,967.66. The Debtor must cure the loan arrearage. To propose or do otherwise is a modification of Creditor's rights which is prohibited by 11 U.S.C. §1123(b)(5).

**G. The Plan contains no default provisions.**

The Plan does not contain any default provisions which provide Creditor's rights and remedies in the event of default on the provisions of the Plan. The Debtor's plan must contain a default provision.

**H. The Plan provides in Article IX that the Property vests in the Debtors free and clear of any encumbrances:**

Creditor to the provision contained in Article IX which states that:

"On the Effective date, all property of the estate will vest in the reorganized Debtors pursuant to §1146(b) of the Code free and clear of all claims and interests except as provided in this Plan".

The Debtor has not "provided otherwise" anywhere else in the Plan. Thus it would appear that this provision applies to the Property. Creditor objects to this proposal. Creditor requests that the Plan terms be clarified to provide that Property, which is the security for the debts owed to Creditor, does not vest in the Debtors free and clear of claims and encumbrances.

THE BANK OF NEW YORK MELLON'S
OBJECTION TO CONFIRMATION . . . Page - 9
87150

RCO
LEGAL, P.S.

13555 SE 36th St., Ste. 300
Bellevue, WA 98006
Phone: 425.458.2121
Fax:    425.458.2131

Case 13-19444-MLB    Doc 97    Filed 08/29/14    Ent. 08/29/14 13:01:10    Pg. 9 of 10

### III. CONCLUSION

The proposed First Amended Plan of Reorganization dated July 7, 2014 is not feasible, does not provide fair and equitable treatment of creditors and violates non-bankruptcy law. Therefore, Creditor respectfully requests that confirmation of the proposed Plan be denied.

DATED this 28th day of August, 2014.

**RCO LEGAL, P.S.**
Attorneys for Creditor

/s/ Jennifer L. Aspaas
By: Jennifer L. Aspaas, WSBA# 26303

THE BANK OF NEW YORK MELLON'S
OBJECTION TO CONFIRMATION . . . Page - 10
87150

RCO LEGAL, P.S.
13555 SE 36th St., Ste. 300
Bellevue, WA 98006
Phone: 425.458.2121
Fax: 425.458.2131

Case 13-19444-MLB    Doc 97    Filed 08/29/14    Ent. 08/29/14 13:01:10    Pg. 10 of 10